And that brings up our last case for the morning, which is Tolbert v. Sisyphian, LLC. Are we missing a lawyer? I only see one. I only see one, too. Neil Sonny for the plaintiffs at police. Good morning. Good morning, Your Honor. I'm sorry. I was having technical difficulties here. You're not alone, Mr. Rosen. I've been struggling with them on my end, too. I think we now have you both. So, Mr. Rosen, you may proceed. Thank you very much, Your Honors. Jeremy Rosen, Horvitz & Levy on behalf of the appellants. I will watch the clock, but I would like to have three minutes for rebuttal. But obviously, most important is to answer any questions any of you may have. Here, the district court originally, in the original motion to compel arbitration, properly found that the parties had both valid arbitration agreements and valid delegation clauses. Those two findings are not at issue here. And given both the valid arbitration agreement and the valid delegation clause, there are a myriad of reasons why the district court later erred in issuing the order that is on appeal here, vacating the prior order granting the motion to compel arbitration. To begin with, even without a delegation clause and even without reaching or getting to the preemption question, there is a strong presumption and a clear presumption that the Supreme Court has held in Howsam v. Dean Witter that the presumption is that the arbitrator shall decide allegations of waiver, delay, or a like defense to arbitrability. Here, that is exactly what we have. There's a question that the arbitrator was faced with as to whether there was an improper delay in processing payment based upon an invoice that was set by the arbitrator. The arbitrator concluded by issuing an order fixing some of the problems with the original invoice and setting a 30-day time limit in which to pay that invoice. My clients paid well within that 30-day time limit, and that is a question that in any situation is when there's a valid arbitration agreement based upon the Supreme Court's precedent is conclusively in the purview of the arbitrator and not the district court to decide. What's the time delay between the petition for arbitration and the actual payment by your client of all three fees? Certainly, Your Honor. So if you look in the record at ER 762, an initial, although incorrect, invoice was October 5, 2020. An initial but incorrect invoice was sent out by the staff at the arbitration agency. And at ER 763 and 764, there's indication that the defense counsel was making numerous telephone calls to the case manager to address that. On November 17, 2020, at ER— Mr. Rosen, I just need the beginning and ending date. Oh, certainly. I'm sorry. So the invoice went out on October 5, and— The original invoice went out on October 5, and then a second invoice went out on March 5, and it was paid, I think, six days later. So paid on March 11? Yes, and that's, I think, at ER 610 and 641 and 643. Okay. Then let me go on to my question under FAA Section 3. As I read that statute, and I haven't found a lot of case law on this, it says that the court shall, on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. And this is what I want to focus on. Providing the applicant for the stay is not in default in proceeding with such arbitration. So is that for the judge to decide or for the arbitrator to decide? Because it seems to be directed to the court. Well, I think it would depend at what stage that you're talking about. As we pointed out in, I think, our reply brief, the Supreme Court in the Henry Schein case in 2019 addressed this very issue where there was an argument made there that under Section 3, the court had to decide certain questions that the Supreme Court had then said were clearly delegated to the arbitrator. And so here, once the arbitration has been initiated and given both the presumption from Howson and the delegation clause, the question of whether there's a default has to go to the arbitrator. There is no basis and there's no authority that would give the district court the authority to determine whether or not there was a default here because the question is the effect of an invoice sent by an arbitrator. I think clearly the arbitrator is in the best situation to determine what effect an initial invoice versus a corrected invoice would have. Well, that gets us in, though, to the purpose behind SB 707, which, as I understand it, is to encourage speedy arbitrations. And so they put a provision in the statute that says that if the party requesting arbitration delays the arbitration, then in essence, that can amount to a waiver and you lose your right to arbitrate. And the district court seemed to be influenced by the statute, but also by your client's delay in initiating payment, in making payment. I think there's a couple of answers to this. First, outside of the preemption question, which I can get to in a moment, it's who gets to decide whether there was the improper delay. And here, you know, both on Howsam and the delegation clause and all the cases talk about delegation, including Mohammed v. Uber and others from this court and Supreme Court, makes clear that it's the arbitrator who has to decide, you know, assuming that SB 707 is a valid law, that just like any other substantive law that's at issue in the arbitration, the arbitrator has to decide if there's been a violation and has to, in the first instance, determine whether or not there is, in fact, an improper delay. Here, you know, there were many reasons that the arbitrator could well have concluded there wasn't an improper delay. The original invoice was wrong. The defense counsel brought it to the attention of the arbitrator. The arbitrator took a few months to, you know, look at, to resolve the ex parte motion. And then the arbitrator issued an order that very specified, here's the revised invoice. You have 30 days to pay. And then my clients paid within those 30 days. That's within the purview of the arbitrator. The arbitrator also noted that the plaintiffs elected not to properly raise the SB 707 waiver question with the arbitrator and, in fact, invited the plaintiffs to do so. The plaintiffs elected not to do so and instead to rush to the district court. And again, it is not for the district court to decide these questions once there's an arbitration initiated. The one thing that troubles me about your position is that the party, in this case the employer, is in the position of being able to delay the resolution mechanism by simply not paying. And the arbitrator is not going to do anything until he gets paid. So how do we protect the other party to the proceedings? In this case, the dancers who want to get resolved the question of whether they're employees or independent contractors in dancing at the clubs. Well, I think the answer to that is that here the arbitrator was very much involved in resolving the questions of what payment was required and when it was required. And this court's case, the sink case, also is an example of where the arbitrator was brought, where the plaintiff raised the issue with the arbitrator that the defendants had not paid in a timely fashion. The arbitrator concluded that that was correct and dismissed the arbitration. And then this court said that that was properly the decision of the arbitrator and confirmed the district court's decision to accept that conclusion from the arbitrator. So it is not as if the plaintiffs are without a remedy here. And going back to clear Supreme Court authority, the question, the real question posed by this case is who gets to decide if the defendants are in violation of SB 707, assuming it's not preempted, which I think it is, which we can get to. Would you, would you, would you turn to the question of preemption, please? Because I am interested in that. Certainly, Your Honor. So here, so here the statute on its face, SB 707, says that only for employment or consumer arbitration contracts that require the drafting party to pay certain fees. If those fees are not paid within 30 days, quote, the drafting party is in material breach of the arbitration and is in default of the arbitration and waives its right to compel arbitration. On its face, this violates 9 U.S.C. Section 2, which requires that an agreement in writing to submit to arbitration shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract. By its face, SB 707 applies a per se rule that applies to no other contract in California. And therefore, under the equal footing principle of, as confirmed by the Supreme Court many times in this court, it is preempted. And I think actually this court's, you know, decision in Chamber of Commerce, the majority opinion and setting aside, you know, I know there's an en banc proceeding and, you know, the dissent may or may not be correct in Judge Akuta's dissent. But even accepting, as we must for now, the panel majority, the Chamber of Commerce decision makes a very clear distinction between conduct, it says, that occurs before the formation of an arbitration agreement, which in that case it found was not preempted, and also conduct that occurs after the formation of the arbitration agreement, which it found to be preempted. Of course, here, all of the conduct that is at issue is conduct that occurred after the formation of a valid arbitration agreement and after the initiation of a valid arbitration proceeding. And therefore, under this court's most recent jurisprudence in Chamber of Commerce, there has to be preemption because SB 707 is treating arbitrate certain arbitration contracts on its face differently than any other contract. Right. Council asked you to, we, the Chamber of Commerce decision, you may not be aware of it, has been, the proceedings have been stayed pending the Supreme Court's decision in Viking River. And we asked you to address Viking River. Does that support your position? The Supreme Court's taking of cert in that case, does that support your position? I think it does. So I guess, you know, and here, you know, without having the benefit of your each of your internal thoughts, I can just sort of give out sort of a range of sort of scenarios about how Viking River applies. I think that even without what the Supreme Court will do in Viking River, and even, as I said, even regardless of whether the Chamber of Commerce case goes en banc or not, under the majority opinion in Chamber of Commerce and all of the prior cases, I think our case here is quite easy in terms of on its face being not equal treatment. I think if the court wants to be, you know, cautious and have the benefit of, you know, all recent decisions, it would certainly not be imprudent to hold for decision in this case also to the end of June, when the Viking River opinion will come out. And when, you know, we might be able to do short, you know, 28-J letters just to give our take on what Viking River says. I mean, I just have to, you know, this, of course, is just speculation, but after multiple times the Supreme Court denying cert on this PAGA question, the fact that they now take it from an unpublished California Court of Appeal opinion, I find it hard to believe that they will do anything other than, again, find a preemption and once again, you know, set aside California laws, you know, antithetical to arbitration, which would just give it. But the issue there, Mr. Rosen, is whether or not arbitration can exclude class action or PAGA suits. Here, the legislature adopted this provision in order to encourage arbitrations to move faster, and the one party who can delay that is the employer by not paying in timely fashion the fee that the arbitrator requires before the arbitration will proceed. I think a couple questions, a couple answers to that. Again, assuming for a second that it's not preempted and that that is a valid purpose of the statute, the arbitrator has the power and is the sole entity that has the power to address whether there's a violation of SB 707. It's not as if the plaintiffs don't have a remedy to enforce SB 707. It's just that the remedy... I'm suggesting to you my questioning that the provision actually imposes no obstacle but actually furthers federal policy behind encouraging arbitration. So how... I guess... Why is SB 707, why is it preempted? I guess I would dispute that statement because if you look both at its face, it treats arbitration agreements different from any contract, which facially is a violation of 9 U.S.C. 2. And if you look at the legislative history, despite my friend on the other side's efforts in the appellee's brief to say that the California legislature was trying to promote arbitration, that's just absolutely not the case. The legislative history makes clear that the California legislature does not like employment arbitration agreements. It wants to discourage them and in fact passed this in an effort that it hoped and expressly said in the legislative history that it hoped it would lead to fewer arbitration agreements being used. So I don't think this is an effort by the California legislature to promote arbitration. Quite the contrary. But even regardless of whether it's pro or anti-arbitration, the question, the threshold question is who gets to decide. And here, both with the delegation clause and based on just the general presumption under Housam, this absolutely has to be a decision of the arbitrator to decide. It cannot be a decision by the district court because... That's a separate question from whether or not SB 707 is preempted, is it not? That's true. And I think we could get a... The district court should be reversed whether or not you find SB 707 is preempted and whether or not you reach the preemption issue. It should be reversed on the basis that the district court had no basis to make the decision. That's a decision only the arbitrator can make. So what's the remedy for the employee where the employer refuses to pay at all? That would be the remedy from sink. You would file a motion in the arbitration and the arbitrator would presumably dismiss the arbitration for lack of payment. I don't think there's any reason to assume. And in fact, the FAA would not permit us to assume that the arbitrator would do anything other than take the appropriate response. And I think there is ample... The time period that you gave me in response to my earlier questions, there was a six month delay here before your client finally paid the fees for the three employees. Well, two of those months was taken by the arbitrator taking a long time to rule on the ex parte. And another multiple months was taken up by sort of going back and forth with the staff at the arbitrator about an improper invoice. I mean, I think that's a question on SB 707 that has never been addressed and the arbitrator can address it. Which is just because it says you have to pay within 30 days, it doesn't tell you 30 days from what bill. And it certainly is a reasonable interpretation that it can't be that you have to pay an improper invoice within 30 days and that you don't have a right to complain about the invoice and get a proper invoice. And here, that's exactly what my clients did. The arbitrator issued a corrected invoice and issued an order saying you have to pay within 30 days. Under SB 707, I think that's the triggering event for SB 707. My clients paid within six days, didn't even take the full 30 days. And that should be conclusive. And how was the initial invoice improper? I'm sorry I'm just that fast. So the improper invoice had a couple of problems. One is the initial invoice included the certain monies that actually were the plaintiff's burden to pay. And then because there were three arbitrations where there was going to be some joint sort of sessions to sort of discuss how to address because they had sort of common issues. They were separate proceedings, but there was common elements. And the objection made by our clients was that there should at least be only one fee for a joint session that was dealing with all three cases, not three separate fees. And the arbitrator agreed with that, issued a revised invoice at which my clients then paid pursuant to the plain text of the arbitrator's order to pay within 30 days. Okay. Thank you, Mr. Rosen. We've taken you over your time, but we'll give you a couple minutes to rebuttal. Thank you. Morning, Your Honors, Neil Sani on behalf of the plaintiff's appellees. I want to turn directly to delegation as that is obviously the antecedent question in this case. And I think the Sisyphean's delegation clause argument carries a fundamental problem, which is exactly what Judge Tallman, you recognized under their delegation theory, you would have to end up in a situation where you're giving the arbitrator the power to decide a question when nobody has yet paid the arbitrator to make any decisions or have authority to decide the question. And that's, that's obviously impossible and is exactly what SB 707 was enacted to prevent. And that's even a problem, whereas here a party eventually pays the fees, you know, as Sisyphean did here, they paid the fees five months later, after the plaintiff's moved the district court to stay, after briefing was completed on the motion, and just two days before the district court was going to have a hearing on the precise question of waiver. That sounds like, I mean, I take the point that there's a concern with delay, but Housam specifically identifies delay. It says waiver, delay, or a like defense to arbitrability are all things that are presumptively within the province of the arbitrator. So it seems like the Supreme Court had already thought of that, didn't they? No, Your Honor, and I think that that language in Housam has been read by this circuit and almost every other circuit to not stand as broadly as it can seem from that decision. And in this court's decision in Cox v. Oceanview, which we cite directly in our brief, this court held that the issues of breach and waiver are presumptively for the court to decide. It held that again in Martin v. When deciding whether to issue or lift a stay, to decide the question of whether a party is in default of the arbitration. And I think Housam, of course, was about a very different issue. It was about a procedural rule set out by the arbitration forum's rules. But the reasoning in Housam, the fundamental reasoning in that decision, the Supreme Court says when you're deciding the question of who decides, you ask what would the ordinary contracting parties reasonably expect? So would contracting parties expect the question to go to court or to the arbitrator? And I think in this circumstance, unlike the circumstance in Housam, ordinary contracting parties would certainly expect the question of whether a party's refusal to pay and refusal to begin arbitration at all, in many circumstances, meaning that there would be no arbitrator in panel, there would be no arbitration proceeding in the first place, should go to the court. And that reasonable expectation is confirmed both by FAA section three. So even if you find that section three does not command courts to decide the question, certainly when parties enter into a contract, FAA section three informs their expectations about the decision maker. And this court's precedent also informs the expectations of a reasonable contracting party. And so again, we have to think about what are the reasonable expectations of the parties entering into this contract. And that creates a presumption in favor of the court. And then the question is, is there clear and unmistakable evidence that the parties intended, despite that presumption, to send the case to an arbitrator? And here, again, that answer is kind of controlled by this court's decisions in Martin v. Souda and in Cox v. Oceanview. In both those cases, the arbitration agreement had language that is effectively the same as the delegation clause here, saying that issues about enforceability or the scope of the arbitration agreement would go to the arbitrator. And this court held in both cases that that did not delegate the question to the arbitrator. And so I think the statute, this court's precedent, and the most fundamentally, I think, kind of common sense understanding of what parties would expect, all confirm that it's the court's obligation to decide this question. And, you know, just addressing a couple other things that Mr. Rosen mentioned. Mr. Rosen mentioned SINK, but I think SINK is strong support for our position on delegation, and of course, on the preemption question as well. But in SINK, the district court conducted the independent examination of the record to determine what their default. And so this court in SINK decided that the question was for the court to decide. Now, they didn't say it didn't, I guess it was not specific in the opinion, but then the Tenth Circuit's decision in prepaid legal services versus Cahill specifically recognizes that SINK properly found that that was for the court to decide and recognize that Section 3 provides courts with that authority. So I think there's just overwhelming consensus that this question is for the court and has to be for the court, because in the ordinary case, there wouldn't be no arbitrator at all. And so I think, you know, the other side rests a lot on Howsam, but the courts have read that language, which was not necessary to the court's decision at all in Howsam, much more narrowly than it appears from the text of the opinion. Can I just say, you mentioned some of our cases, Cox and a couple others construing delegation clauses. You say we're similar to this. I don't have the clauses for those cases. I mean, did they? This one says any disputes over the validity or enforceability of any part of the agreement, including these arbitration provisions. Did the clauses in the other cases that we've addressed have that specific reference to disputes over the enforceability of the arbitration provision? I believe that it's so. In Yusuda, the arbitration agreement said all determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator and not the court. So that is referring decisions about the enforceability and effect and scope of the arbitration agreement. That is a delegation clause, effectively the same as the language in this case. And I guess, Your Honor, our position is that, you know, under section three, this question cannot be delegated to the court, to the arbitrator. But even if you disagree, I think this court's recent unpublished decision in Decker v. Levin-Solor shows what you need as clear and unmistakable evidence. In that case, the delegation agreement specifically identified the issues of breach and default as questions for the arbitrator to decide. And so I think when you have a heavy presumption in this case because of the concerns Judge Tallman identified earlier, that the question is for the court. And perhaps that can be overcome by clear and specific language, such as identifying breach or identifying waiver or default for the court to decide. But it certainly cannot be done through kind of general language about the enforceability of scope of the arbitration. And how do you, to the extent that you're relying on section three for this presumption, how do you reconcile your reading of section three with Henry Schein? Yes, Your Honor. So I think Henry Schein did not actually discuss this question. So Henry Schein said that section three does not prevent questions of arbitrability generally to be delegated to the arbitrator. And in Schein itself, the question was not anything about default or waiver. The question was about whether the particular dispute, an antitrust dispute in Schein, fell within the scope of the arbitration agreement. So it said that section three poses no obstacle to referring that question or delegating that question to the arbitrator. But section three specifically calls out default. So here we're not having a clash between kind of the general question of arbitrability and the statute. Here, the specific question that the other side is saying should be delegated to the arbitrator is specifically and expressly called out by the statute to be decided by the court. And so I think that's a very different situation from Schein. So it is true that questions about arbitrability under Schein can be delegated, but Schein did not weigh in on this specific question. And again, even if section three does not command that a court decided, it must be read to kind of inform the expectations of an ordinary contracting party. And so the other side has to explain why, when you have a statute and precedent informing kind of that the authority would be to the court, you have to overcome that with something more than just general language about enforceability or scope. Unless your honors have more questions on delegation, I can turn to preemption now. Your Honor, on preemption, I think it's pretty important, again, to start with what section to preempt. So the Supreme Court and this court have found laws preempted under section two in two categories. So first, where state laws invalidate or render unenforceable certain types of arbitration agreements ex ante. And that's, you know, cases like Casarato, that's cases like Marmot, Kindred. Then you have other cases like Concepcion, Epic Systems, where the court holds that the operation of state law interferes with fundamental attributes of arbitration. But here, neither is presented. So as Judge Tolman was mentioning earlier, this law does not render any arbitration agreement invalid or unenforceable. It actually assumes the validity enforceability of an arbitration agreement. It assumes that a person properly tries to enforce the arbitration agreement, and it then simply clarifies what the obligations are when one of the parties refuses to comply with the arbitration agreement. And so it's very different from cases like Casarato or Kindred, because this arbitration agreement has not been rendered invalid or unenforceable. And there's no kind of, I don't think there's any plausible argument that SB 707 interferes with fundamental attributes of arbitration. There's no fundamental attribute of arbitration, nor any purpose of the FAA that's served by allowing parties to engage in gamesmanship, to refuse to pay arbitration fees, thus preventing arbitration from happening at all, or to, you know, delay the payment of fees for months or years until the other side has to sue. And I think that's actually the opposite of what arbitration is supposed to be. The Supreme Court has made clear over and again that arbitration is supposed to be speedy, it's supposed to be efficient, and the type of tactics used by Sisyphean, used by other bad actors, kind of undermines those purposes. And so this law doesn't fall under any of those types of preemption. So I think that alone is enough to define the law that it escapes from preemption. But it also... Let me go on. Did you think that, suppose you had a state law that was identical to this one, except that instead of 30 days, it says one day. So failure to pay within one day will be deemed a waiver. Do you think that would raise any preemption issue? Yes, Ron, I think that would raise preemption issues for probably two different reasons. So first, is that that would interfere with the fundamental attribute of arbitration because it would essentially make... I mean, a fundamental attribute of arbitration is that it has to exist and be available. And I think if you created a rule that they only had one day to pay, you'd essentially render the entire mechanism illusory. So I think that would be one reason it's preempted. And second, I think that wouldn't reflect... If we move to the equal treatment principle analysis, that kind of rule wouldn't reflect the background principles of California law, whereas the present rule does. And I think this court... Do you think it's a background principle of California law that when you have a contractual obligation to pay something, if you don't do it within 30 days, you forfeit all your rights under the contract? Well, your honor, I think, I mean, I think that the outcome here and in every case would be the same under background principle contract law, it would just require years of litigation. And I think the way we know that is this court's own decision in Brown v. Dillard's. So in Brown v. Dillard's, this court applied California common law of contracts and concluded that the refusal to pay fees for about the same time period, I believe it was a shorter time period, maybe two months, constituted breach and waiver under California law. And so I think that shows why SB 707 is needed. The problem without having a statute is that parties need to litigate in every case, spend a lot of time wasting time over the question of default and waiver. And that's exactly the opposite of what the FAA was intended to do. So SB 707 gives parties both sides advance notice of what when a waiver can occur. And I think this is really helpful for companies as well, right? A company that pays its fees as required by the contract that they drafted would never trigger SB 707's provision. Have any states enacted similar statutes? I'm not aware of that, Your Honor. But I just think that it's important to realize that SB 707 could never be triggered if companies paid their fees on time, right? And so it's only where the company refuses to pay its fees that SB 707 is triggered. What's also great about this law is that it gives companies notice so they don't inadvertently waive the right to arbitrate, right? Under the common law rule, it could be that some court decides that you waived your right and you didn't know beforehand, let's say you're the company's general counsel, when you had to move to arbitrate. Whereas under SB 707, you know, as long as you do it 30 days within the due date of your fees, which is a quite a reasonable amount of time for a company that drafted the arbitration agreement and then in most cases moved to compel arbitration, then you cannot waive your right to arbitrate. Do you disagree with Mr. Rosen's explanation of the nature of the dispute here and how it was resolved? The dispute over the timeline? Yes, Your Honor, I do actually. I think you can look at the excerpts of record at page 358 and 360. You can see that there are emails from the arbitration provider asking Sisyphean to make its payments and there's no response to those emails. And so Mr. Rosen references a declaration in the record far after the proceedings that are at appeal here, in which one of the attorneys for Sisyphean kind of testified that he was making phone calls to the arbitration provider to try to figure out the fees. But at the time the fees were due and in the three months that that followed, there was no request by Sisyphean to get an extension on their fees. There was no request to get a partial fee payment. There was no request, no explanation that they should be excused from paying the fees because of issues with their business. So it was just silence for three months and there's nothing in the record showing that they sent anything or made any written statement. And then it's when the plaintiffs moved to lift the stay based on SB 707, that Sisyphean filed an ex parte application in the arbitration provision. And then when briefing was completed on the motion, they went and paid their fees, right? Five months later, and nothing would have prevented them from doing that. They paid the full amount of fees. They could have done that months before, but it was because it's clearly a transparent effort to forestall the district court's decision on waiver and default. And I think those facts are relevant. This case is obviously not about just this case. It's a question about what is the presumption for delegation, whether the statute is preempted. But I think the tactics employed in this case demonstrate precisely why SB 707 is needed and precisely why it serves the purposes of the Federal Arbitration Act. So I think the decision should be affirmed. Are there any further questions from the panel? Looks like there are not. So thank you, Mr. Sawney and Mr. Rosen. Two minutes on the clock. Thank you, Your Honor. I'd like to start with the Martin v. Yesuda case because that actually confirms our argument. Martin v. Yesuda was about litigation conduct in the district court before a petition to compel arbitration was filed. And what this court found in that case is that the district court is in the best position to decide the effect of litigation conduct before the district court. But if you look at footnote three of the Martin v. Yesuda opinion, this court also says that there is a huge difference between questions about whether a party failed to comply with the arbitration forum-specific rules, which this court said would be for the arbitrator to decide, versus the effect of litigation conduct in front of the district courts, which would be for the court to decide. So here we have a classic question of the arbitral rules. What is the effect of the original invoice? Regardless of whether, you know, the evidence is very clear that the original invoice was not the correct amount. It might have taken a few months to get to that, but the arbitrator corrected the amount of the invoice, issued an order requiring payment within 30 days, and that was paid. And that is the arbitrator's decision to make. Now, the question was asked by Judge Miller, the hypothetical of one day versus 30 days. And I think that just sort of highlights the problem with this statute and why it is preempted. Under any other contract in California, there is not a 30-day per se rule of waiver if you don't pay. There's a multi-factor test that is analyzed, and that's what the Sink Court did. The arbitrator in Sink found, as well as in Brown versus Dillard, found under generally applicable laws in California that there was a forfeiture of the right to arbitrate by lack of payment. And that is... So why did your client ignore the arbitrator's reminders of unpaid invoices and never request an extension? Well, first of all, my client did, and that was the record sites that I gave. Now, Mr. Sani does correctly point out that this was in a declaration that I think was filed in connection with the stay motion when this issue was sort of brought up in requesting a stay in the district court. But no one has ever disputed the accuracy of the defense trial counsel from the day that the incorrect invoice was out was in communication with the arbitrator staff. And then the arbitrator staff said, you know, this is something you have to raise with the arbitrator. And so, and then contrary to what Mr. Sani says, it wasn't their filing in the district court. It was the statement by the arbitrator's staff saying you have to file something with the arbitrator that led to the filing of the ex parte, which we did. And again, at the end of the day, if my client is as horrible and as terrible as Mr. Sani says, which I, of course, don't agree with, the arbitrator would then be able to conclude that we had violated, you know, the California law about prompt payment and could dismiss the arbitration just as happened in sync. What is wrong here is that the district court took it for itself to determine whether or not my clients were in compliance with the arbitrable rules and whether because of preemption or because of how some or because of the delegation clause, there has to be a reversal. And I do think that under the section three argument that is addressed by Henry Schein, which says that when you have a delegation clause, the arbitrator is supposed to decide the things that are delegated. Here, the delegation clause delegates every issue regarding enforceability of the arbitration agreement. The enforceability here, of course, is part and parcel of whether or not it was timely paid and whether or not my clients had waived their right to arbitrate. That is a decision that the arbitrator has to decide. And it was wrong and legal error for the district court to decide it itself. Unless the panel has any questions, I appreciate the extra time and I'm happy to submit. There are no further questions. So thank you, Mr. Rosen. Thank both counsel for a very, very good, very helpful argument. Excellent, excellent briefing and excellent argument. Thank you. Thank you. The case is submitted and that concludes our calendar. For this session, sense adjourn.
judges: SCHROEDER, TALLMAN, MILLER